:37 LRA468n

GEORGE W. HEATHMAN

*v.*

JOHN G. ROGERS, Assignee.

*Filed at Springfield October 30, 1894.*

1. EQUITABLE LIEN—*lost by taking chattel mortgage.* An equitable lien upon chattels is waived by the acceptance of a chattel mortgage as a security for the indebtedness, and the mortgagee must rely upon the validity of his mortgage.

2. VOLUNTARY ASSIGNMENT—*chattel mortgage held invalid as a preference.* A chattel mortgage taken with knowledge that the mortgagor is in danger of insolvency, and with an understanding that the same should not be recorded until failure of the mortgagor became unavoidable, and which was in fact recorded only thirty minutes previous to a deed of assignment, which the mortgagor withheld from record until the mortgage was recorded, is invalid, as giving an illegal preference.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the County Court of Cook county; the Hon. CHARLES H. DONNELLY, Judge, presiding.

Messrs. GREEN & ROBBINS, for the appellant :

An agreement for the withholding of a mortgage from record is not, of itself, sufficient to justify a court in holding, as a matter of law, such mortgage fraudulent and void. *Hutchinson* v. *Bank,* 133 Ind. 271.

The promise to give appellant a mortgage, even if such mortgage had never been in fact executed, created an equitable lien, which was valid against appellee and general creditors. *Union Trust Co.* v. *Trumbull,* 137 Ill. 146 ; *Read* v. *Gaillard,* 2 Dessau. Eq. 552 ; *Lanning* v. *Tompkins,* 45 Barb. 308 ; *Love* v. *Sierra,* 32 Cal. 639 ; *Husted* v. *Ingraham,* 75 N. Y. 251 ; *Printup* v. *Barrett,* 46 Ga. 410 ; *Arnold* v. *Morris,* 7 Daly, 498.

Liens in the nature of equitable mortgage arise from defective or informal arrangements. *Parker* v. *Muggridge,* 2 Story, 342 ; *Hill* v. *Omaha,* 49 N. Y. 632 ; *Williams* v. *In-*

*gersol,* 23 Hun, 284; *Dow* v. *Ker,* Speer's Eq. 415; *Kirksey*
v. *Means,* 42 Ala. 426; *Railroad Co.* v. *Tallman,* 15 id. 472;
*Walsh* v. *Usher,* 2 Hill's Ch. 168; *Sullivan* v. *Tuck,* 1 Metc.
Ch. 59; *Card* v. *Jaffray,* 2 Sch. & Lef. 374; *Taylor* v. *Wheeler,*
2 Vern. 565; *Ligard* v. *Hodges,* 1 Ves. Jr. 477.

A chattel mortgage, although void as against creditors
because not recorded as required by statute, is valid
against an assignee in bankruptcy. *Stewart* v. *Platt,* 101
U. S. 731.

Mr. WILLIAM R. BURLEIGH, for the appellee:

The fact that the security is invalid, the invalidity
arising from the neglect of the mortgagee, is not ground
for equitable relief. *Printup* v. *Barrett,* 46 Ga. 410; *Ship-
man* v. *Seymour,* 40 Mich. 274; *Putnam* v. *Reynolds,* 44 id.
113; *Harvey* v. *Crane,* 2 Biss. 499; *Crosswell* v. *Allis,* 25
Conn. 301.

Mr. JUSTICE BAKER delivered the opinion of the court:

This was a petition filed by appellant, on October 14,
1893, in the county court of Cook county, claiming a lien
to the amount of $5487.85 upon three hundred and fifty
sets of bed-room furniture in the possession of appellee,
as assignee of the World's Fair Encampment, under an
assignment for the benefit of creditors made by that com-
pany July 3, 1893. After answer filed by appellee, the
court, upon a hearing, denied the prayer and dismissed
the petition. Appellant thereupon appealed to the Ap-
pellate Court, where the order of the county court was
affirmed.

The record discloses the following facts: On the 12th
day of December, 1892, a corporation known as the
World's Fair Encampment was organized for the purpose
of conducting a hotel adjacent to the World's Fair. To
this end it constructed a building, and, to equip the same,
E. C. Kemble, secretary and treasurer of the company,
early in March, 1893, purchased from the Ottawa Furni-

ture Company and the Hastings Furniture Manufacturing Company furniture to the amount of $5487.85, which is the furniture in controversy. In payment therefor the encampment company gave to said furniture companies four promissory notes, aggregating $5487.85, each of which was endorsed by appellant, who subsequently paid them as they severally became due. In order to secure appellant from loss on account of endorsing the notes, it was the understanding, at the time, that the encampment company should give him a chattel mortgage upon the said furniture. Thereafter such a mortgage was in fact drawn up, but by mutual consent of the parties was retained by Kemble, the secretary, and kept in his possession until July 3, 1893, when it was duly acknowledged and delivered to appellant's agent for record. Thirty minutes after recording the same, the World's Fair Encampment filed for record its deed of assignment for the benefit of creditors.

The doctrine of equitable liens, so ably discussed by counsel, can have no application to the facts of this case. Appellant, at the time the mortgage was delivered to him, had his election either to accept it, or to stand upon his lien based upon the promise to give him a mortgage. He chose the former course, and thereby elected to stand by the mortgage. He now comes into court and insists that his mortgage is valid, and that he is therefore entitled to possession of the furniture, and at the same time asks that if, for any reason, the mortgage shall be deemed to be void, he may nevertheless have his prayer granted, because he has an equitable lien based upon the unfulfilled promise. This he cannot do, for one cannot aver that a promise has been kept, and in the same breath aver that it has been broken.

The only question, then, to be determined is, does the mortgage lien claimed by appellant, and sought to be enforced in his favor, constitute an illegal preference? From a review of the evidence it is manifest that at the

time of the endorsement of the notes, when the mortgage was agreed upon, appellant was aware of the unstable condition of the encampment company and of the danger of its ultimate insolvency.  He was greatly interested in the success of the company, inasmuch as he had advanced to his son, who was one of the promoters of the enterprise and one of its directors, money to put into it. He did not wish to impair the credit of the company, already hard pressed, by having the mortgage recorded, and to that end there was an understanding between him, his son, E. M. Heathman, and Kemble, the secretary, that the mortgage should remain in Kemble's possession, and should not be recorded until failure was unavoidable.

Appellant, on cross-examination, testified that at the time he endorsed the notes he was aware that the company was hard pressed for money.  He further testified : "I instructed him, (E. M. Heathman,) if he saw fit or saw it was to our interest, to record it," (the mortgage.)  And again : "I first knew that the mortgage had been recorded, on the 3d or 4th of July."  His son testified to the same effect.  E. C. Kemble testified that he was a director of the World's Fair Encampment Company, and was also its secretary and treasurer ; that the financial situation of the company had been under discussion for two months prior to the assignment, on July 3, and that the matter of the necessity of making an assignment had been frequently spoken of by E. M. Heathman and himself ; that the mortgage remained in his possession from the time it was drawn up until the day of the assignment. He said, further : "I had an understanding with G. W. Heathman (appellant) that the mortgage was not to be recorded unless it was necessary—unless we were about to fail ; that was about the amount of it—to protect the property against other creditors."  And again : "At the time we started out to acknowledge the mortgage, we had voted to make an assignment at the meeting of directors that morning.  We held the deed of assignment

off the record until the chattel mortgage was put on record."

Under the circumstances of the case the mortgage must be regarded as a part of the assignment, and as giving an illegal preference to appellant. (*Preston et al.* v. *Spaulding et al.* 120 Ill. 208.) The proceeds of the mortgaged property should be equally distributed among the creditors of the insolvent company.

We find no error in the record, and the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*